# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| HARRIS DAVIS REBAR, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 17 C 6473 |
| STRUCTURAL IRON WORKERS LOCAL UNION NO. 1, PENSION TRUST FUND, | ) | Judge John Z. Lee |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Defendant Structural Iron Workers Local Union No. 1, Pension Trust Fund ("the Fund") has filed a motion to compel discovery responses and a motion for extension of time to complete discovery. For the reasons stated herein, Defendant's motion to compel [44] is granted in part and denied in part, and its motion for extension of time to complete discovery [42] is granted. Fact discovery to close on June 4, 2019. To the extent the parties seek discovery of electronically-stored information ("ESI"), they are directed to meet and confer and, by February 25, 2019, submit a proposed ESI discovery plan consistent with this order. A status hearing is set for April 4, 2019.

## Background

Plaintiff Harris Davis Rebar, LLC ("HDR") filed this action in September 2017 seeking a declaratory judgment that it is not subject to withdrawal liability to the

Fund under the Employee Retirement Income Security Act ("ERISA") and the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq*. HDR contends that the Fund is seeking to hold it liable as the successor or alter ego of either one of two companies: Old Chicago Steel, LLC ("Old Chicago") and Davis J.D. Steel, Inc. ("DJD"). The Fund's position is that, before one or both of Old Chicago and DJD sold their assets to HDR in November 2012, they were liable for monthly contributions to the Fund. The Fund argues that HDR, Old Chicago, and DJD structured the asset purchase to avoid withdrawal liability under ERISA for any of the three entities.

The Fund served its first requests for production and first set of interrogatories on HDR on February 16, 2018. Def.'s 1st RFPs, ECF No. 44-2; Def.'s 1st Set Interr., ECF No. 44-3. HDR responded on April 17, 2018, asserting a number of general and specific objections to each request. Pl.'s Resp. Def.'s 1st RFPs, ECF No. 44-4; Pl.'s Resp. Def.'s 1st Set Interr., ECF No. 44-5. On May 4, 2018, at the parties' Local Rule 37.2 conference, the Fund agreed to limit the timeframe for which it is seeking documents to November 1, 2012, through December 31, 2014. HDR, in response, agreed to produce some documents, but generally stood by its objections. Accordingly, the Fund has filed a motion to compel responses to its first set of discovery requests, as well as a motion for extension of time to complete discovery. These motions are now before the Court.

## Legal Standard

District courts enjoy broad discretion in controlling discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Under Federal Rules of Civil Procedure ("Rules") 26(c) and (d), a court may limit the scope of discovery or control its sequence. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.] . . . Information within [the] scope of discovery need not be admissible in evidence to be discoverable." Relevance in discovery is broader than relevance at trial; during discovery, "a broad range of potentially useful information should be allowed" when it pertains to issues raised by the parties' claims. *N.L.R.B. v. Pfizer, Inc.*, 763 F.2d 887, 889–90 (7th Cir. 1985). A court can, however, further limit relevant information sought in discovery if the information is "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).

## Discussion

The Fund contends that HDR has failed to produce documents in response to the Fund's initial discovery requests. Indeed, HDR has raised a number of objections in response to the requests. The Court will address each objection in turn.

### I. Geographic Jurisdiction of the Fund

Through its requests for production and interrogatories, the Fund seeks information about HDR's nationwide business activities, including documents such

3

as customer lists, accounts receivable, communications with customers and vendors, and employment records. The Fund contends that such information is highly relevant to its theory that HDR is an alter ego or successor of Old Chicago or DJD. It argues that both the alter ego doctrine and the successor doctrine "require a review of the entirety of the operations of the entities alleged to be, or in this case not to be, alter egos / successors." Def.'s Mot. Compel at 5, ECF No. 44.

HDR, by contrast, takes the position that its activities are relevant to alter ego or successor liability only to the extent they fall within the geographic jurisdiction of the Structural Iron Workers Local Union No. 1 ("Local 1")—the union that contracts with employers to require contributions to the Fund. What is more, HDR contends, even if some information about its outside activities may be relevant, it would take 150 to 200 hours of investigation to gather responsive material and therefore would be far more burdensome than appropriate. Accordingly, it has objected to each of the Fund's discovery requests for seeking "expansive information about HDR's and other entities' operations and relationships outside of" Local 1's jurisdiction. Pl.'s Resp. Def.'s 1st RFP at 2–3.

Both parties are half right. Withdrawal liability—which, under the MPPAA, applies to employers that cease contributions to multiemployer pension plans—may attach to a successor or alter ego of the employer that originally was obligated to pay into the pension fund. Successor liability requires "substantial continuity of the business," which is determined by looking to the totality of circumstances,

4

emphasizing six factors: (1) ownership, (2) physical assets, (3) intangible assets, (4) management and workforce, (5) business services, and (6) customers. *See Ind. Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.*, 884 F.3d 770, 777–78 (7th Cir. 2018); *see also Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325–26 (7th Cir. 1990). The alter-ego analysis looks at similar factors, but also requires "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through the sham transfer of assets." *Chi. Dist. Council of Carpenters Pension Fund v. Vacala Masonry, Inc.*, 946 F. Supp. 612, 617 (N.D. Ill. 1996) (quoting *Trs. of Pension, Welfare, & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785, 789 (7th Cir. 1993)). Neither inquiry is explicitly limited to the jurisdiction of the contributing union.

The Fund does not dispute, however, that HDR is a "building and construction" employer subject to the particular withdrawal liability provisions under 29 U.S.C. § 1383(b). In the construction industry, a "withdrawal" from a multiemployer pension plan is considered to have occurred only when (1) an employer "ceases to have an obligation to contribute under the plan," and (2) it either "continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required" or "resumes such work within 5 years" after the obligation to contribute ceased. 29 U.S.C. § 1383(b). Therefore, even if a company is a "successor" or an "alter ego" of a previously contributing company, it

5

cannot be liable for a withdrawal from the plan unless it has continued or resumed the work of its predecessor—in other words, the "withdrawal" must be complete for liability to attach to either entity.

In this case, then, there are two relevant questions. First, has a withdrawal occurred, *i.e.*, has HDR continued or resumed work that created DJD's or Old Chicago's contribution obligations *within the Fund's jurisdiction*? Second, can HDR properly be considered a successor or alter ego to either previous entity? The second question is not strictly limited to the Fund's jurisdiction, but the first question is.

These questions provide a useful lens through which to view the Fund's discovery requests. Evidence of HDR's continuation or resumption of Old Chicago's or DJD's business activities within Local 1's jurisdiction is most probative, as it goes to both questions. Evidence of HDR's activities in other jurisdictions, however, goes only to the question of HDR's status as a corporate successor or alter ego, and has nothing to do with the issue of whether a withdrawal has occurred. What is more, the probative value of HDR's activities in other jurisdictions is limited even as to the successorship or alter-ego analysis. *See Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1095–97 (9th Cir. 2015) (explaining that the most important factor for successorship analysis in the construction industry is whether the putative successor takes over the original company's business within the "funding base of the Plan," *i.e.*, the "construction projects in the area" of the union's jurisdiction). Asking HDR to provide unlimited

6

discovery related to its nationwide business activities therefore would be unduly burdensome and unlikely to lead to more than a minimal amount of relevant evidence.

The Court concludes that the best way to handle this tension is to divide the Fund's discovery requests into two categories. First, there are requests related to customers, vendors, and projects. As to this category, the Court concludes that the most relevant evidence will come from inside the jurisdiction of Local 1. *See id.* Although customers, vendors, and projects outside the jurisdiction may bear some relevance to the successor or alter-ego issues, it is more likely that this information will be irrelevant and, to the extent it has any relevance, the burden to obtain and produce such information would substantially outweigh its usefulness here.

As to the first category, therefore, HDR is ordered to produce responsive documents and information only to the extent it possesses any such records pertaining to activities within the geographic jurisdiction of Local 1. This applies to customer lists (Requests for Production ("RFP") 1–2); accounts receivable information (RFP 3); communications with customers (RFP 4); communications pertaining to jobs and projects (RFPs 5–8, 21, 23–24 and RFP 22 insofar as it seeks information regarding work and projects, and Interrogatory 5); invoices, work orders, and bids for work (RFPs 9–10); and contracts with vendors and suppliers (RFPs 11–12, and Interrogatory 6).

The second category consists of requests related to the management,

7

administration, employment, financial records, property and assets, business locations, and communications regarding the Fund or other employee benefits plans. These activities are less tied to a specific location and may shed light on HDR's status as a successor or alter ego of Old Chicago and/or DJD, regardless of where they occurred.

As to this second category, HDR is ordered to produce responsive documents and information, regardless of geography. This applies to communications between HDR personnel and Old Chicago and/or DJD about the Fund (RFPs 13–15), payroll and employment records (RFPs 16–17), financial and corporate records (RFPs 18–19, 30–31), communications regarding the appointment of managers and officers (RFP 20), communications regarding the transfer of employees between and among HDR, Old Chicago, and/or DJD (RFPs 25–29, and RFP 22 insofar as it seeks information regarding employees), records relating to assets and property (RFPs 29, 32–35), communications regarding withdrawal liability (RFP 36), and communications regarding the National Reinforcing Steel Agreement (RFPs 37–40). Similarly, HDR must produce information responsive to Interrogatories 1–4.

## II. Attorney-Client Privilege & Work Product Doctrine

HDR asserts attorney-client privilege and the work product doctrine in response to a number of the Fund's discovery requests. However, HDR does not provide any information to substantiate its claims of privilege or work-product protection. Accordingly, to the extent HDR believes any relevant, responsive

8

documents are subject to privilege or work-product protection, it is ordered to comply with Rule 26(b)(5) and to produce a privilege log. *See Naik v. Boehringer-Ingelheim Pharm., Inc.*, No. 07 C 3500, 2008 WL 4866015, at *3 (N.D. Ill. June 19, 2008).[1]

## III. Confidential & Proprietary Information

HDR has also objected broadly to the Fund's requests for "extensive confidential and proprietary information," but indicates that it will produce responsive material "after a suitable protective order and a privilege claw-back agreement are agreed to by the parties and entered by the Court." Pl.'s Resp. Def.'s 1st RFPs at 2. The parties have since entered into such an agreement. Thus, to the extent it has not yet done so, HDR is ordered to produce relevant and responsive materials in accordance with the confidentiality order in this case.

## IV. Remaining Objections

HDR has raised several other objections in its responses to the Fund's discovery requests, such as relevance, vagueness, and ambiguity. The Fund has countered each of these objections in its motion, but HDR has not responded to those arguments. Accordingly, HDR waives its remaining objections to the Fund's discovery requests. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

The Court will, however, lay out a few general principles to guide the parties

---

[1] This conclusion applies to documents not yet produced, as well as to the "Struble Documents" identified in HDR's motion for sanctions [51]. The Court incorporates its conclusions with respect to attorney-client privilege and the necessity of a privilege log as discussed in its order on that motion [79].

9

in response to HDR's objections. First, the Court observes that the majority of HDR's objections—to relevance, vagueness, overbreadth, and proportionality—are meaningless boilerplate that are "tantamount to not making any objection at all." *Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (internal quotation marks and citation omitted). The Court will not waste time in the future on such arguments devoid of analysis (and, frankly, neither should the parties).

HDR also objects to many of the Fund's discovery requests on the basis that they provided no reasonable time limitation, but the Fund has informed the Court that it is willing to limit its discovery requests to the period between November 1, 2012, and December 31, 2014. The Court agrees that this limitation is reasonable.

Lastly, HDR objects generally to the Fund's discovery requests insofar as they "seek and/or presume that HDR has or had knowledge relating [to] the operations and/or customers of other separate legal entities." Pl.'s Resp. Def.'s 1st RFP at 3. The Court agrees that HDR cannot be compelled to produce documents or information it does not possess. Otherwise, HDR has waived any arguments concerning the Fund's inquiries into its relationships with other legal entities. *See Bonte*, 624 F.3d at 466.

## Conclusion

The Fund's motion to compel [44] is granted in part and denied in part as stated above. The Fund's motion for extension of time to complete discovery [42] is granted. Fact discovery to close on June 4, 2019. To the extent the parties seek discovery of ESI, they are directed to meet and confer and, by February 25, 2019, submit a proposed ESI discovery plan that is consistent with this order. A status hearing is set for April 4, 2019.

**IT IS SO ORDERED.**  ENTERED  2/5/19

_____

**John Z. Lee**
**United States District Judge**